# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

JAMES A. BARKER III,
Plaintiff,

v.

SAMUEL A. CHRISTENSEN, individually and in his official capacity
as Clerk of the Wisconsin Supreme Court and Court of Appeals;

AMY VANDERHOEF, individually and in her official capacity
as Racine County Clerk of Circuit Court;

RANDY KOSCHNICK, individually and in his official capacity
as former Director of State Courts,

Defendants.

Case No. _____ **26-C-0795**

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS — 42 U.S.C. § 1983
## JURY TRIAL DEMANDED

1. Plaintiff James A. Barker III, appearing Pro Se, brings this action pursuant to 42 U.S.C. § 1983 against Defendants Samuel A. Christensen, Amy Vanderhoef, and Randy Koschnick for deprivation of constitutional rights under color of state law. Plaintiff seeks declaratory relief, injunctive relief, and damages.

## I. JURISDICTION AND VENUE

2. Jurisdiction exists under 28 U.S.C. §§ 1331 and 1343. This action arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. § 1391(b) as all events occurred in Racine

County, Wisconsin. No exhaustion of state remedies is required prior to filing a § 1983 claim. Patsy v. Board of Regents, 457 U.S. 496 (1982).

**3. Heck v. Humphrey, 512 U.S. 477 (1994):**

4. No claim in this complaint requires invalidation of the underlying conviction. All counts arise from Defendants' administrative conduct independently of the conviction's validity. Count Seven specifically does not assert the underlying searches were unlawful — it asserts that Defendants' administrative conduct systematically blocked Plaintiff's constitutional right to have warrant defects adjudicated under Franks v. Delaware, 438 U.S. 154 (1978). Counts Three and Four challenge obstruction of a live appellate proceeding involving $86,470.97 in civil restitution judgments, independent of the conviction.

**5. Eleventh Amendment and Quasi-Judicial Immunity:**

6. Official capacity damages are limited to prospective injunctive relief under Ex parte Young, 209 U.S. 123 (1908). Individual capacity damages are sought against each Defendant personally. Quasi-judicial immunity extends to clerks only when acting under judicial direction on functions integral to the judicial process. Sindram v. Suda, 986 F.2d 1459 (D.C. Cir. 1993); Antoine v. Byers & Anderson, 508 U.S. 429 (1993). The administrative acts alleged here — withholding records, making false statements of law, failing to file submitted documents, producing fabricated court documents, and signing denial orders in proceedings challenging the clerk's own conduct without identified judicial supervision — fall outside that protection.

## II. PARTIES

7. Plaintiff James A. Barker III resides at 1403 West 6th Street, Apt 214B, Racine, WI 53404. He is subject to extended supervision discharging May 19, 2026 and civil restitution judgments totaling $86,470.97 entered March 11, 2026, currently on appeal in Appeal No. 2026AP000902 CR.

8. Defendant Samuel A. Christensen served as Racine County Clerk of Circuit Court throughout Plaintiff's underlying criminal proceedings (2015–2023) and was appointed Clerk of the Wisconsin Supreme Court and Court of Appeals on June 18, 2023, simultaneously controlling both offices. On May 4, 2026 — the date this complaint was filed — Christensen signed the order denying Plaintiff's motion seeking his own recusal. He is sued individually and in his official capacity.

9. Defendant Amy Vanderhoef served as Felony Case Manager in the Racine County Clerk's office throughout Plaintiff's criminal proceedings, is audio-recorded in multiple encounters with Plaintiff and his attorneys, and is documented as the named preparer of judicial assignment applications and the producer of defective ASP appointment documents in Case No. 2015CF000627. She is now the Racine County Clerk of Circuit Court. She is sued individually and in her official capacity.

10. Defendant Randy Koschnick served as Director of State Courts and processed the reserve judge assignment paperwork for Judge Gerald Ptacek's assignment to Case No. 2015CF000627 on a form bearing a prohibited modification and lacking proper Supreme Court authorization. He is sued in his individual capacity.

### III. FACTUAL ALLEGATIONS

#### A. Background

11. Plaintiff was convicted of Conspiracy to Commit Felony Theft under Wis. Stat. § 943.20 in Case No. 2015CF000627 following a November 2018 jury trial. Civil restitution judgments totaling $86,470.97 were entered March 11, 2026. Plaintiff has a pending Wis. Stat. § 974.06 post-conviction motion filed May 4, 2026 and a pending appeal (Appeal No. 2026AP000902 CR). This complaint is filed May 4, 2026.

#### B. Vanderhoef's Documented Conduct in the Underlying Proceedings

12. Vanderhoef's role in depriving Plaintiff of constitutional rights is documented across three audio and video-recorded encounters, each with precise attorney presence noted, and through her administrative participation in the production of defective ASP appointment documents.

#### 13. Warrant Records Obstruction — April 4 and April 14, 2016.

14. On April 4, 2016, Plaintiff and his attorney Toni Young visited the Clerk's office and DA's office seeking original warrant records (Exhibit N). The visit produced a circular referral documented on recording: the Clerk's office directed Young to the ADA; the ADA directed her back to the Clerk. Only two warrants were located. On April 14, 2016, Plaintiff and Attorney Young returned (Exhibit O). Vanderhoef produced only two warrant documents and stated 'This is all we could find.' When Young pressed on the absence of notary seals, Vanderhoef stated on recording: 'State law does not require a notary seal anymore on documents. You don't have to have a seal anymore. It's not required.' This statement was false in four independently documented respects: (1) Wis. Stat. § 137.01(4) expressly requires notary seals on official acts; (2) State v. Tye, 2001 WI 124 — originating from Racine County — holds that notarization defects are

constitutional violations requiring suppression under the Fourth Amendment, not technical irregularities curable under § 968.22; (3) Park 6 LLC v. City of Racine, 2012 WI App 123, establishes that documents lacking legally required foundational elements are void ab initio; and (4) Investigator VanScyoc confirmed under oath at the April 26, 2018 suppression hearing that notarization was legally required for the warrant affidavits. Tr. April 26, 2018, 51:13-17. Vanderhoef's false statement of law, made to a licensed attorney during an active warrant investigation in her official capacity as records custodian, caused the attorney to terminate the investigation of a constitutional defect directly supported by the controlling Racine County suppression standard.

15. The falsity of Vanderhoef's statement is independently corroborated by Attorney Vincent Bobot — a former judge, Racine County litigator, and the attorney who argued and won Park 6 LLC v. City of Racine, 2012 WI App 123, the controlling void ab initio authority cited throughout this complaint. Bobot subsequently reviewed the same warrant affidavits and stated on audio recording: 'You've got the investigator signing this and it's sworn to him. And I don't know who he swore to' — and separately stated 'there's case law right on point that he has to' have properly sworn, identifying the missing notary seal as a defect. Bobot — the architect of the void ab initio standard Vanderhoef's statement was designed to neutralize — independently identified the identical notarization defect on the face of the same documents. Exhibit M.

### 16. ASP Document Fabrication — Three Versions, All Void.

17. On November 29, 2016, Plaintiff appeared alone and without counsel demanding the ASP appointment document. Vanderhoef produced a document she stated had to be faxed from Walworth County — confirmed by the fax header on the document: 'NOV/29/2016/TUE 10:42

AM WALCO DA's Office FAX No. 262-741-7200.' This Version 1 ASP document had a completely blank Oath and Consent to Serve section — no attorney signature, no name, no bar number, no notary — because the document was being constructed in real time. Vanderhoef handed a void-ab-initio appointment document to an unrepresented pro se party. The next day, November 30, 2016, the Wisconsin DOA Legal Counsel Elisabeth Winterhack provided Version 2 in response to Plaintiff's public records request — identical to Version 1 except Johnson's completed oath now appeared. Both versions bear the same physical backdating defect: the August 19, 2016 Clerk stamp is physically superimposed on the August 23, 2016 DA Office stamp, proving backdating. Both versions also bear a blank 'Other statutory reason' citation line — the form identifies the statutory authority requirement but leaves it empty. A third version (Version 3) appeared in CCAP on April 13, 2018 — four days after Plaintiff raised the appointment defect on the record — signed by Judge Timothy Boyle, who was not the presiding judge; with the DOA affidavit checkbox unchecked despite the form identifying this as required under § 978.045(1r); and filed as a retroactive cure attempt barred by Park 6 LLC. All three versions were produced through the administrative pipeline controlled by Christensen and Vanderhoef. None cures the others. Under Park 6, what happens after a faulty start cannot make up for it.

### 18. The 8th Floor Sequence — No ASP in Any Records System.

19. On November 29, 2016, Plaintiff first went to the 8th floor Clerk of Courts office at 730 Wisconsin Avenue, Racine. Clerk Jamie Harding checked both the traditional court records and the electronic court records and verified that no ASP appointment document existed in either system. Clerk Paula Heitmann then intervened and also could not locate the document in either system. Heitmann then stepped away, stating she was calling across the street to Felony Case Manager

Amy Vanderhoef's office at 717 Wisconsin Avenue to see if they had a copy. After approximately fifteen minutes, Heitmann told Plaintiff to go to the Felony Courts office at 717 Wisconsin Avenue to obtain the form. The absence of any ASP document in either the traditional or electronic records system as of November 29, 2016 — verified by two separate clerks — establishes that the document did not exist in the official court record at that time. What Vanderhoef subsequently produced was not retrieved from a file. It was produced during the fifteen-minute window between Heitmann's call and Plaintiff's arrival.

## 20. The Video Recording at 717 Wisconsin Avenue — Three-Way Coordination Captured on Camera.

21. Plaintiff's cellphone video recording of his arrival at the Felony Courts office at 717 Wisconsin Avenue documents the following sequence with precision. At timestamp 01:48 of the 07:32 recording, an unidentified clerk wearing a purple coat with black pants exits Vanderhoef's office to the far right of the frame, begins walking toward the clerk window while avoiding all eye contact with Plaintiff and the recording device, then makes a sharp left out of frame without acknowledging Plaintiff standing at the help window. The document production is already in motion before Plaintiff is acknowledged.

22. At timestamp 03:51, the purple coat clerk reappears from the closer right side of the frame, while simultaneously Attorney Laura Walker — court-appointed attorney for Plaintiff's co-defendant Joshua Golden — appears from the further right, entering from the doorway leading to the hallway in the direction of Judge Faye Flancher's chambers. These are two distinct entry points. Only Walker's entry point leads toward Flancher's chambers. Both then enter Vanderhoef's office together. At timestamp 04:00, Plaintiff yells to Walker: 'Aye excuse me! You see them back there

making that document?' Walker looks directly at Plaintiff and continues into Vanderhoef's office without responding. The court record reflects that Judge Flancher subsequently attempted to assign Walker as Plaintiff's court-appointed attorney — an assignment Plaintiff objected to on the record. Walker had no administrative function in Plaintiff's case that would explain her presence entering Vanderhoef's office from Flancher's chambers hallway at the precise moment the ASP document was being produced in response to Plaintiff's unannounced demand.

23. At timestamp 04:16, the purple coat clerk reappears in frame. Plaintiff yells: 'Excuse me! Can I get some help please?' She replies: 'What?' Plaintiff: 'I need some help, no one has given me any service.' She replies: 'They're working on it.' Plaintiff: 'What they working on?' She walks closer to the window: 'They're looking for your file. The judge has your file.' Then: 'The judge has your file, she is in court right now, so we're trying to get it.' Plaintiff: 'The judge has my complete file?' The clerk walks away without responding. At timestamp 05:13, Plaintiff calls out again: 'Aye, excuse me, can I ask you something?' Purple coat clerk replies: 'They're working on it.' Plaintiff: 'This got nothing to do with that. She got my complete discovery, everything?' Clerk: 'I'm not involved, they're working on it.' Plaintiff asks for her name. She does not respond. Plaintiff: 'You don't want to give me your name? You smart. You don't want to get involved with this.' The purple coat clerk's continuous appearances throughout the entire sequence — exiting Vanderhoef's office at 01:48, reappearing from the closer right at 03:51 as Walker simultaneously enters from Flancher's chambers hallway, and reappearing again at 04:16 — while refusing to identify herself and delivering the statement that Judge Flancher has Plaintiff's complete file on a day with no scheduled court date, ties this clerk directly to the document production occurring inside Vanderhoef's office throughout the sequence.

Case 2:26-cv-00795-PP     Filed 05/05/26     Page 8 of 18     Document 1

**24. Vanderhoef's Conduct at the Window.**

25.  Vanderhoef conditioned her willingness to speak on Plaintiff stopping his recording — a condition directed at a pro se party without counsel present. She stated: 'You can't record. I'm not going to talk to you if you record. I have a right to refuse to talk to you if you're recording.' After Plaintiff set his phone down while continuing to record, Vanderhoef told him the document 'is not scanned into the computer so I can't print it out right now' and stated she had called the special prosecutor's office to see if they had a copy to email her. She then produced the blank-oath Version 1 ASP document — faxed from Walworth County DA's office per the fax header — with the Oath and Consent to Serve section completely blank. Vanderhoef handed a void-ab-initio appointment document to an unrepresented pro se party who had just witnessed its production on camera. Both backdated ASP versions were subsequently received and stamped by Christensen's Clerk's office on March 30, 2017. Christensen took no administrative action.

**C. Christensen's Administrative Failures (2015–2023)**

26.  Christensen received documented notice of warrant defects as early as January 4, 2016, when defense attorney Nielsen's letter — CC'd by Plaintiff directly to Christensen, DA Johnson, and Attorney Bobot simultaneously — raised questions about the LCU Order of Court and VanScyoc's warrant record notations (Exhibit F). Plaintiff's act of placing all three parties on the same notice chain in January 2016 forecloses any argument that the warrant issues were raised late or manufactured post-conviction. Despite this notice, the following documented failures occurred under Christensen's administration:

- March 24, 2017: Plaintiff filed 39 exculpatory documents. Receipt signed by Deputy Clerk Jamie Harding. Only 11 of 39 were entered in the electronic records system. The

Case 2:26-cv-00795-PP    Filed 05/05/26    Page 9 of 18    Document 1

- remaining 28 — bearing on warrant fabrication and notarization defects — never appeared in CCAP. Plaintiff emailed Christensen March 26 requesting correction. No response.
- March 25, 2017: Plaintiff sent Christensen an 11-page sworn letter documenting warrant fabrication, blank warrant template discs, ASP backdating, and records failures. The blank warrant template disc referenced in Plaintiff's letter is the same disc documented in defense attorney Saldana's June 22, 2015 email to DA Patricia Hanson, in which Saldana confirmed he had picked up a disc from the DA's office labeled 'search warrants & photos' — establishing that a disc containing blank warrant templates was in the DA's possession as early as June 22, 2015 (Exhibit Q). Christensen received Plaintiff's sworn documentation of that disc and responded with three sentences addressing none of the substance.
- March 30, 2017: Christensen's office received and stamped both backdated ASP versions — with the physical backdating defect visible on the face of each document — and took no administrative action.
- April 26, 2017: Plaintiff filed sworn affidavit to Deputy Chief Judge Milisauskas requesting criminal investigation charges against Christensen under Wis. Stat. §§ 943.39, 943.38, 939.23, 939.31, and 946.12. Christensen did not respond to any of the four documented questions.
- July 10, 2017: Brian Graziano, Administrative Deputy of the Racine County Clerk of Circuit Court — Christensen's own staff — issued a letter on official Clerk of Courts letterhead stating the office would not certify any documents in the discovery sent by the Walworth County District Attorney's office, characterizing the materials as 'not a Racine County Clerk of Courts record.' This disclaimer was issued on the same date the warrant-related discovery materials were being returned to the prosecution. The disclaimer did not come from defense counsel — it came from inside Christensen's own office. Graziano subsequently testified on June 4, 2018. The use of Christensen's own Administrative Deputy to generate an official disclaimer of warrant-related discovery materials, on the date of their return to the prosecution, is direct evidence of the Clerk's office's administrative participation in removing those materials from the defense record.
- April 4, 2018: Plaintiff filed his motion objecting to Ptacek's assignment with Christensen's office, citing Wis. Stat. § 757.19(2)(d), Wis. Stat. § 137.01(4), State v. Tye, Park 6 LLC, 28 U.S.C. § 455(a), Liljeberg, and Balistrieri. Christensen's office took no administrative action. Ptacek presided through November 2018 trial.
- Structural Conflicts — Documented by Official Court System Records: According to the Wisconsin Court System's official June 2, 2023 press release announcing Christensen's appointment as Clerk of the Supreme Court and Court of Appeals (wicourts.gov/news/view.jsp?id=1557), Christensen served on: the CCAP (Consolidated Court Automation Programs) Steering Committee — overseeing the same electronic records system from which warrant documents could not be located in Plaintiff's case; and the Board of Administrative Oversight for the Office of Lawyer Regulation — the body that gave defense counsel Saldana a diversion agreement rather than formal discipline on April 2, 2016, while Christensen was simultaneously administering Plaintiff's case records in which Saldana's conduct was directly at issue. These concurrent roles, documented in Christensen's own official court system biography, placed him in

structural conflicts of interest across every administrative mechanism Plaintiff depended upon for records access and effective representation. Exhibit T.

### D. The Three-Order Pattern — Christensen Signing His Own Recusal Denials

27. Since his 2023 appointment as Clerk of both Wisconsin appellate courts, Christensen has signed three dispositive orders in proceedings that directly challenge his own prior conduct — establishing the structural due process violation at the core of Count One:

- Order 1 — April 22, 2026 (Exhibit A): Wisconsin Supreme Court, Case No. 2026AP000019-OA. Christensen signed ex parte denial of Plaintiff's Original Action petition challenging warrant records custodial failures that occurred on his watch. No justice or commissioner named as reviewing officer.
- Order 2 — May 1, 2026 (Exhibit B): Wisconsin Supreme Court reconsideration denial. States 'by its Commissioners' but signed solely by Christensen. No commissioner identified. Director of State Courts Skwierawski served by U.S. Mail rather than electronic notice — confirming administrative-level awareness of the conflict.
- Order 3 — May 4, 2026 (Exhibit C): Wisconsin Court of Appeals, Appeal No. 2026AP000902 CR. Christensen signed the denial of Plaintiff's motion specifically seeking Christensen's recusal. The order states 'Before Neubauer, P.J.' but is signed solely by Christensen. The conflicted officer processed and signed his own recusal denial on the same date this complaint was filed.

28. In every Wisconsin state court proceeding where Plaintiff asked for Christensen's conflict to be addressed, the response was signed by Christensen. No Wisconsin state court has reviewed the substance of Plaintiff's conflict claim through a process that did not route through the conflicted officer. Because no identified judicial officer directed or supervised any of the three specific signing acts, Christensen was acting in a purely administrative capacity and quasi-judicial immunity does not attach. Sindram v. Suda, 986 F.2d 1459 (D.C. Cir. 1993).

### E. Vanderhoef's Current Dual Statutory Default

29. Vanderhoef is simultaneously failing two independent statutory obligations in the same case. On March 22, 2026, Plaintiff served her with a public records request via FedEx with confirmed

delivery. As of May 4, 2026 — 43 days later — she has not responded despite four direct personal contacts, violating Wis. Stat. § 19.35(4)(a). Plaintiff's Notice of Appeal was filed April 14, 2026. The record transmission deadline under Wis. Stat. § 809.15 passed April 27, 2026. The appellate record has not been transmitted. Plaintiff's Motion to Compel Record Transmission, filed May 4, 2026, remains pending. The concurrent failure of both obligations by an officer whose audio-recorded prior conduct is directly at issue in the case those obligations govern supports deliberate obstruction rather than administrative delay.

### F. Vanderhoef and Koschnick — Judicial Assignment Chain

30. Vanderhoef is the named preparer on both critical judicial assignment applications in this case. On May 7, 2015, she prepared the substitution application assigning Judge Gasiorkiewicz and signed the Notice of Assignment as Court Official — exhausting Plaintiff's one statutory substitution right under Wis. Stat. § 971.20 (Exhibit H). On April 2, 2018, she prepared the Flancher disqualification application identifying Ptacek as replacement judge (Exhibit I). Koschnick then processed the Ptacek assignment on a form bearing the notation 'Chief Justice' overlapping 'Circuit Court' under Chief Justice Roggensack's name, on a form stating 'This form shall not be modified,' without proper Supreme Court authorization. Ptacek subsequently admitted under oath on April 9, 2018 that he had signed a warrant at issue in the case — triggering mandatory disqualification under Wis. Stat. § 757.19(2)(d). Five days before that admission, Plaintiff's April 4, 2018 recusal motion — filed with Christensen's office, citing § 757.19(2)(d) — was already on file. Ptacek received actual notice and presided through the November 2018 trial anyway. The four-actor chain — Vanderhoef initiating, Koschnick processing defectively, Christensen receiving the objection without action, and Ptacek presiding with actual notice —

operated in coordinated fashion to maintain a presiding judge who had no lawful authority to be there.

## IV. STRUCTURAL DUE PROCESS VIOLATION — THE CLOSED LOOP

31. Vanderhoef controls the circuit court record. Christensen controls the appellate court docket. Together they form the only pathway through which every state judicial remedy available to Plaintiff must pass. As of May 4, 2026 — the date this complaint is filed — the appellate record has not been transmitted, the appeal has not been docketed, the Motion to Compel is pending without ruling, and the conflict motion was denied today by Christensen's own signature. No judicial officer has reviewed the substance of Plaintiff's constitutional claims in any forum through a process that did not route through Christensen. Plaintiff's supervision discharges in fifteen days. The structural due process violation does not require this Court to find the underlying conviction wrongful. It requires only what the documentary record already shows: the officers controlling Plaintiff's access to every state court remedy have documented conflicts arising from their own prior conduct in the proceedings those remedies would challenge, and every attempt to address those conflicts through state channels has been routed back through the conflicted officer himself. Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009); Tumey v. Ohio, 273 U.S. 510 (1927); Withrow v. Larkin, 421 U.S. 35 (1975).

## V. CLAIMS FOR RELIEF

**Count One — Due Process (14th Amendment): Christensen's Three-Order Pattern**

32. Christensen signing three dispositive orders across two courts in proceedings challenging his own prior conduct — including his own recusal denial on May 4, 2026 — without identified judicial supervision of those specific acts, deprives Plaintiff of due process under the Fourteenth

Amendment. Tumey, 273 U.S. 510; Withrow, 421 U.S. 35; Caperton, 556 U.S. 868. No judge signed any of the three orders. Christensen acted in an administrative capacity. Quasi-judicial immunity does not apply.

### Count Two — Due Process (14th Amendment): Christensen's Administrative Records Failures

33. Christensen's failure to file 28 of 39 submitted exculpatory documents in the electronic records system, his coordination of discovery return to the prosecution, his receipt of two physically backdated ASP documents without action, and his receipt of Plaintiff's formal Ptacek recusal motion without administrative response — while serving as statutory records custodian — deprived Plaintiff of due process and access to courts. Bounds v. Smith, 430 U.S. 817 (1977); Lewis v. Casey, 518 U.S. 343 (1996). These were administrative acts outside the scope of quasi-judicial immunity.

### Count Three — Due Process (14th Amendment): Vanderhoef's False Statement of Law and Pattern of Obstruction

34. Vanderhoef's affirmative false statement that notarization was 'not required' — directly contradicting Wis. Stat. § 137.01(4), State v. Tye, Park 6 LLC, and the State's own witness under oath — made in her official capacity at the moment Plaintiff's attorney was investigating warrant authenticity, deprived Plaintiff of due process and access to courts. Her production of a blank-oath, backdated, void-ab-initio ASP document to a pro se party, her 43-day failure to respond to a public records request, and her failure to transmit the appellate record constitute a continuing pattern of the same conduct: using administrative control over Racine County court records to prevent Plaintiff from accessing the legal basis for challenging those records.

### Count Four — First Amendment Retaliation: Christensen

35.  Christensen's signing of denial orders in proceedings where Plaintiff named him in sworn criminal complaints — including signing his own recusal denial on May 4, 2026 — constitutes retaliation against Plaintiff for petitioning the government for redress of grievances, in violation of the First Amendment as applied through the Fourteenth Amendment. Christensen had actual knowledge of the complaints naming him prior to signing each order and signed without identified judicial supervision.

### Count Five — Conspiracy: Christensen and Vanderhoef

36.  Christensen and Vanderhoef, acting in concert under color of state law, have engaged in a continuing course of conduct depriving Plaintiff of constitutional rights. Dennis v. Sparks, 449 U.S. 24 (1980). The conspiracy is evidenced by: their concurrent defaults in the pending appeal; Christensen's prior prosecution-coordination email while administering Plaintiff's records; Vanderhoef's false notarization statement closing off the same defect whose documentation Christensen's office later failed to file; the three-version ASP sequence produced through the same administrative pipeline; and the structural result — Plaintiff cannot access any state judicial remedy because both officers controlling the relevant pathways are the same officers whose conduct those remedies would challenge.

37.  The conspiracy is further corroborated by audio-recorded statements of Attorney Vincent Bobot — a former Racine County judge with direct knowledge of the case — who stated on recording: 'The reason why they put a special prosecutor in and the reason why you're doing the judge shuffle is because the people that bailed out know something and they figured, I'm not going to get involved in this. This isn't my mess to clean up.' Bobot also described Racine County's

judicial and prosecutorial structure as operating where 'everybody knows everybody' — characterizing as structural the same relationships among judicial officers, the DA's office, and the Clerk's office that produced the administrative conduct alleged in this complaint. These statements by a former judge and Racine County litigator with direct case knowledge constitute corroborating evidence of coordinated conduct rather than independent administrative failures. Bobot recordings, Exhibit M.

38. The conspiracy is additionally corroborated by Plaintiff's cellphone video recording of November 29, 2016 at 717 Wisconsin Avenue. At timestamp 03:51 of that recording, Attorney Laura Walker — court-appointed attorney for co-defendant Joshua Golden — enters from the hallway leading to Judge Flancher's chambers and proceeds directly into Vanderhoef's office at the precise moment the ASP document was being produced in response to Plaintiff's unannounced demand. Simultaneously, Judge Flancher is in possession of Plaintiff's complete file despite Plaintiff having no court date scheduled. Plaintiff's on-camera contemporaneous statement — 'You see them back there making that document?' — directed at Walker as she enters Vanderhoef's office, constitutes a recorded contemporaneous observation of coordinated document production. The three-way simultaneous coordination between Flancher's chambers, Walker, and Vanderhoef's office — captured on video with timestamps — is direct evidence of the conspiracy alleged in this count, not circumstantial inference. Cellphone video recording, Exhibit S.

**Count Six — Due Process (14th Amendment): Defective Judicial Assignment**
39. Koschnick's processing of a facially defective assignment order — prohibited modification, no Supreme Court authorization — producing a presiding judge subject to mandatory disqualification under Wis. Stat. § 757.19(2)(d) who had no lawful authority to preside, deprived Plaintiff of due

process and his right to a neutral tribunal. Vanderhoef initiated the assignment chain by preparing both the 2015 substitution application exhausting Plaintiff's § 971.20 substitution right and the 2018 disqualification application identifying Ptacek as replacement. Ptacek continued to preside after actual written notice of his disqualification grounds on April 4, 2018. Processing a facially defective administrative assignment order is not a judicial act and is not protected by judicial immunity.

**Count Seven — Fourth Amendment: Obstruction of Constitutional Warrant Challenge**

40. The Fourth Amendment guarantees not only freedom from unreasonable searches but the right to have warrant defects adjudicated through the suppression process. Mapp v. Ohio, 367 U.S. 643 (1961); Franks v. Delaware, 438 U.S. 154 (1978). Vanderhoef's false notarization statement terminated the warrant authenticity investigation on April 14, 2016. Christensen's failure to file 28 of 39 documents bearing on warrant defects removed from the record the documentary foundation those challenges required. The staff's repeated denial of warrant records inspection contrary to Wis. Stat. §§ 889.07 and 889.08 prevented confirmation of the missing originals — the predicate fact for a Tye suppression motion. The coordinated administrative conduct systematically deprived Plaintiff of his constitutional right to have the warrant defects adjudicated under Franks. This count does not assert the searches were unconstitutional — it asserts that Defendants' conduct made it impossible to litigate whether they were. The obstruction of a constitutional remedy is itself a constitutional injury cognizable under § 1983. Bounds v. Smith, 430 U.S. 817 (1977); Lewis v. Casey, 518 U.S. 343 (1996).

## VI. RELIEF REQUESTED

41. Plaintiff respectfully requests that this Court:

Case 2:26-cv-00795-PP    Filed 05/05/26    Page 17 of 18    Document 1

- Declare that Christensen's signing of three dispositive orders in proceedings challenging his own conduct, without identified judicial supervision, violates the Due Process Clause and is not protected by quasi-judicial immunity;
- Declare that Vanderhoef's false statement of law contradicting Wis. Stat. § 137.01(4), State v. Tye, and Park 6 LLC, and her pattern of records obstruction, constitute due process and Fourth Amendment violations;
- Declare that Defendants' administrative conduct systematically deprived Plaintiff of his Fourth Amendment right under Franks v. Delaware to have warrant defects adjudicated through the suppression process;
- Issue a preliminary and permanent injunction directing Christensen to recuse himself from all administrative duties in Plaintiff's pending state court proceedings and directing reassignment to a neutral officer with no connection to Racine County or the Second Administrative District;
- Issue a preliminary and permanent injunction directing Vanderhoef to respond to Plaintiff's public records request within 5 business days and to immediately transmit the complete appellate record in Appeal No. 2026AP000902 CR;
- Order that the April 22, May 1, and May 4, 2026 orders signed by Christensen be declared void and those proceedings reassigned to a neutral officer;
- Award compensatory and punitive damages against Defendants individually;
- Award costs and such other relief as this Court deems just and proper.

## VII. JURY DEMAND

42. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

James A. Barker III

Plaintiff, Pro Se

1403 West 6th Street, Apt 214B